*865 OPINION.
Smith:
The question involved in this proceeding is whether the payments to F. C. Austin upon his first preferred shares' were in fact distributions of profits to a shareholder or payments of interest on indebtedness. If the latter, they are deductible from gross income; if the former, they are not.
An inspection of the syndicate agreement shows that the certificates of interest held by Austin are throughout the instrument designated as “ shares.” These shares were subject to redemption, as a whole, on July 1,1922, “ by payment of the par value thereof plus *866 dividend at the rate of fourteen per cent per annum from the date hereof to the date of such payment.” (Art. III.) In case of redemption, sale, or other disposition of the property belonging to the Syndicate, the proceeds thereof were to be applied in the order following:
1. To the payment of all debts and obligations of the Syndicate.
2. To the payment of the outstanding first preferred shares of the Syndicate at the rate of One Hundred Dollars ($100) per share plus a dividend thereon at the rate of fourteen per cent, per .annum from the date thereof. (Art. VIII.)
The first preferred shares had no vote, but “ if redemption of all of said first preferred shares as hereinbefore provided shall not be made on July 1,1922, then and thereafter all action by and on behalf of the Syndicate members, including the matters covered by Articles X, XY, and XVI hereof, shall be solely by the vote of the first preferred shares.” (Article VII.)
In Appeal of I. Unterberg & Co., 2 B. T. A. 274, we stated that the name by which an instrument is denominated is not conclusive as to its character and its true nature must be determined by looking to its terms and legal effect. See also In re Fechheimer Fishel Co., 212 Fed. 357, 360; and Fletcher’s Cyclopedia on Corporations, vol. 6, p. 6020, where the legal principle is laid down:
Whether or not the holder of a particular instrument or certificate is to be regarded as a stockholder or a creditor is a question of interpretation, and depends upon the terms of his contract as evidenced by such instrument and the corporate charter and the statutes of the state.
We stated, however, in Appeal of Kentucky River Coal Corporation, 3 B. T. A. 644, 649, that the name which has been given to a corporate issue is not a thing to be ignored “ for it is not lightly to be assumed that parties have given an erroneous name to their transaction.”
In Rider v. Delker & Sons Co., 145 Ky. 634; 140 S. W. 1011, it was held that, even though a certificate of incorporation and the certificate of stock itself provided that after five years the holder of preferred stock might demand back his money in the corporation, he can not enforce this provision until the corporate creditors are paid. The court said:
Tbe capital of a corporation is the sum total of its stock, whether common or preferred. Certificates of stock are mere evidences that the holders thereof have invested the sums called for in the certificates in the enterprise. They run the risk of losing their stock if the business is not a success. As between themselves and third persons who deal with the corporation and give it credit, their stock is equally liable. It is only in eases where the corporation is solvent and the rights of creditors will not be injuriously affected thereby that agreements as to preferences among themselves may be enforced. The entire capital, *867 without regard to any arrangement which may exist between common and preferred stockholders, is at all times subject to and liable for the debts of the corporation, and no part of the capital can be withdrawn from the business until the debts of the corporation are satisfied.
The fundamental characteristic of a share of stock is that the holder is a co-owner of the business and not a creditor. A share of stock carries the right to share in surplus profits and assets after corporate debts are paid. This is shown by the decision in In re Interborough Realty Co., 223 Fed. 646. In that case bondholders sought to prove claims as general creditors. In addition to the ordinary provisions of bonds, the instruments provided for sharing at maturity in net profits. For this reason it was contended that the instrument should be treated as stock. There was no provision in the instruments which would make the claims of the holders for principal and interest subordinate to the claims of general creditors. The court held that the bondholders were promised only repayment of the amount of money loaned with interest, and that the provision to permit holders to share in surplus after payment of debts and 5 per cent on stock did not defeat the bondholder’s right to prove as a general creditor for principal and interest. See also Miller v. Ratterman, 47 Oh. St. 141; 24 N. E. 496; Warren v. King, 108 U. S. 389; Hamlin v. Toledo, etc. R. R. Co., 78 Fed. 664; Heller v. National Marine Bank, 89 Md. 602; 43 Atl. 800.
The petitioner cites the case of Savannah Real-Estate Loan & Building Co. v. Silverberg, 108 Ga. 281; 33 S. E. 908, as one tending to support its contentions. In that case the certificates issued by the Loan & Building Co. were designated as shares of preferred stock. They provided cumulative interest of 8 per cent from profits, carried no right to vote, were to be retired at a fixed date, and the holders were not to share in additional profits. The court held these to be certificates of indebtedness. The decision seems to be based on the provisions of the certificates which provided for their retirement upon a specific date and allowed the holders no voice in the management of the affairs of the corporation. There is also the case of Wright v. Johnston, 183 Iowa, 807; 167 N. W. 680, tending to support the contentions oí the petitioner. In that case shares of so-called preferred stock providing a dividend of 8 per cent were issued. The certificates provided that, in the event of dissolution, holders of these shares were to receive par value plus unpaid dividends and no more. They could not vote. They could, on six months’ notice, require the corporation to purchase the stock at par, plus unpaid dividends. They could also make the demand if four consecutive dividends were passed. The corporation could retire the instruments on a given notice. No mortgage of corporate assets could be given without their *868 consent. The court held that holders of these instruments were not shareholders but creditors.
The preponderance of legal authority favors the Commissioner’s contentions in this case.
Judged by the tests laid down by the authorities upon this point, we conclude that the first preferred shares issued by the petitioner were not certificates of indebtedness and that the dividends paid upon them were not the equivalent of interest paid upon indebtedness. Austin refused to loan his money to the petitioner at the rate of 14 per centum per annum because he was afraid of the penalties prescribed by the usury laws of the State of Illinois. He was, however, willing to become a preferred shareholder in the Syndicate. To be sure, he saw to it that he got good security as a preferred shareholder. But this alone did not make him a creditor. We are convinced that his money was invested in the business and that he was a co-owner and not a creditor.
In oral argument and by brief counsel for the petitioner have emphasized the point that it is the practice of courts to admit parol evidence to explain the meaning of a written instrument where usury laws are involved. The admission of such parol evidence is justified on the ground that the charge of usury raises a question of the legality of the instrument. Clemens v. Crane, 234 Ill. 215, 230; 84 N. E. 884; Ferguson v. Sutphen, 3 Gilm. (Ill.) 547, 566, 567; Galbraith v. Fullerton, 53 Ill. 126, 128. No question of usury is involved, however, in the instant proceeding, and we are convinced that the nature of the first preferred shares is not changed by the fact that the owner of such shares was to receive a high rate of dividend upon them or that such dividend was paid monthly instead of strictly in accordance with the terms of the agreement.
The petitioner originally insisted that the Syndicate was not taxable as an entity but this contention was abandoned.

Judgment will be entered for the Commissioner.